## Security Life Ins. Co. of America v. Eades' Admx.

(Decided March 4, 1913.)

### Appeal from Muhlenberg Circuit Court.

1. Insurance, Life—Contract of Trust Company to Pay Premiums—Liability of Insurance Company.—Where the general agent of an insurance company organizes a trust company for the purpose of paying the premiums on insurance policies written by him, the premiums to be secured by the assignment of the policy, the insurance company, having no connection with or interest in the trust company, is not liable on the trust company contract even though it be issued with the knowledge of the insurance company.

2. Insurance, Life—Principal and Agent—General Agent—Sub-Agent —Authority.—Neither the general agent of an insurance company nor a sub-agent acting under his direction has authority to bind the insurance company by representing to the insured that after the payment of a small sum of money he will never be required to pay any further premiums on the policy.

3. Insurance, Life—Agent—Representations By—Notice to Insured— Right to Rely on Representations.—While the insured may rely on representations of an insurance agent made within the apparent scope of his authority, yet where the agent represents that after the payment of a small sum the insured will never be required to pay any further premiums on the policy, the representation is of such a character as to apprise a person of ordinary prudence that the agent is exceeding his authority, and the insured is not justified in relying on such representations.

4. Insurance, Life—Non-payment of Premium—Forfeiture—Estoppel —Representations of Agent.—An insurance company is not estopped to claim a forfeiture of an insurance policy for the non-payment of the second premium by the representations of its general agent or its sub-agent acting under his direction, to the effect that the insured, after the payment of a small sum, will never be required to make any further payments on the policy.

F. W. BULL, WALTER WILKINS and HUMPHREY & HUMPHREY for appellant.

NEWTON BELCHER and BELCHER & SPARKS for appellee.

Opinion of the Court by William Roers Clay, Commissioner—Reversing.

On October 23, 1908, the Security Life Insurance Company of America issued to Charles E. Eades a policy insuring his life in the sum of $5,000. The annual premium was $339. The second premium, due on October 23, 1909, was not paid. Eades died in February, 1910. His wife, Annie Eades, qualified as his administratrix and brought this action to recover on the policy. At the conclusion of all the evidence the trial court peremptorily instructed the jury to find for the plaintiff. The insurance company appeals.

The evidence for plaintiff shows that Moreau P. Estes was defendant's general agent for the States of Tennessee and Kentucky. He had authority to solicit insurance and to appoint sub-agents for that purpose. For the purpose of assisting him in the business of writing insurance Estes organized the Standard Trust Company of Nashville. This company issued a contract by which it agreed with any one taking out insurance in the Security Life Insurance Company of America to pay, with the exception of a small sum, all the premiums that accrued on the policy. To secure the payment of these sums it took an assignment of the policy, and it was agreed between it and the insured that all sums paid by it, together with six per cent. interest thereon from the date of each payment, should be deducted from the proceeds of the policy, and that the insured should incur no personal liability on account of such payments. In the contract was printed the name of the Security Life Insurance Company of America. The insurance company had no connection whatever with the Standard Trust Company. Estes says, however, that when the terms of the agency contract were being formulated he submitted a copy of the Standard Trust Company contract and the assignment of the insurance policy which was to accompany the contract to Roy Marsh, director of agencies, and Mr. Sykes, the actuary, of the Security Life Insurance Company. He further says that the company knew that he was writing these policies and issuing the Standard Trust Company contract in connection with them. He further states that he wrote no other policies for the Security Life Insurance Company besides those issued in connection with the Standard Trust Company contract. He appointed D. J. Duncan local agent of the insurance company at Green-

ville, and authorized him to solicit insurance in connection with the trust company contract. At the time Duncan solicited the insurance from Eades he told him that he would have no further premiums to pay, but the Standard Trust Company, under its contract, would pay them. He did this under instructions from Estes.

After making this statement to Eades, Eades agreed to take the policy in question. Eades paid Duncan the sum of eighty dollars. Eades was given the policy, the Standard Trust Company contract and a receipt for the first premium, amounting to $339. The Standard Trust Company ceased to do business on December 15, 1908.

Defendant's secretary testified that regular notices of the fact that the second premium had become due on October 23, 1909, were mailed to the insured. While he says that no notice was sent to the insured of the fact that the Standard Trust Company had not paid the second premium, he does say that after the second premium became due he notified the insured that the premium had not been paid. Prior to the delivery of the policy to Eades he made written application for a $5,000 policy on the 20-year payment plan, the annual premium to be $339. In the policy sued on the premium is fixed at $339. The policy provides that in case any premium shall not be paid when due according to the terms of the contract, the policy shall cease and determine, except as otherwise therein expressly provided. It is unnecessary to note the other provisions, as they have no bearing on this case. Here there was a default in the payment of the second premium. Therefore, no question of extended or paid up insurance is involved.

Plaintiff's position is this: Estes was defendant's general agent. He was authorized to appoint sub-agents to solicit insurance. Defendant's director of agencies and actuary knew that Estes was soliciting insurance in connection with the Standard Trust Company contract. Duncan, the sub-agent, received authority from defendant's general agent to solicit insurance in connection with the Standard Trust Company contract. Duncan was authorized to represent to Eades that the Standard Trust Company would pay all subsequent premiums and charge the amount so paid, with interest, against the policy, and Eades would incur no personal liability therefor. He did make these representations to Eades and at the same time delivered to him the Standard Trust Company contract in accordance with the representations. Eades, relying upon

the representation of Duncan that he would not be required to pay any further premiums, but that they would be paid by the Standard Trust Company, took out the insurance. Defendant is therefore estopped to rely on the fact that the second premium was not paid. It is also estopped by the further fact that it failed to notify Eades that the Standard Trust Company had not paid the second premium.

The evidence not only does not show that the insurance company had any connection with the Standard Trust Company, but the evidence for plaintiff affirmatively shows that there was no connection between the two companies. The Standard Trust Company contract was in no sense the contract of the insurance company, even though it was issued with the knowledge of the insurance company. It follows, therefore, that the contract in question imposed no liability on the insurance company. It is not claimed in the pleadings, nor is there any evidence to establish any contract between the insured, the Standard Trust Company and the insurance company, by which the latter agreed to look solely to the Standard Trust Company for the payment of all subsequent premiums on the policy issued to the insured. As the policy provided for a forfeiture on the non-payment of the second premium, and as the insurance company pleaded and proved that the second premium was not paid and that the policy was thereupon declared forfeited, the real question in the case is: Is the insurance company estopped from claiming a forfeiture by reason of the representations made by its agent to the insured to the effect that he would have no further premiums to pay, but that the Standard Trust Company would pay them, which representations were made pursuant to authority from the insurance company's general agent. While there are instances where it has been held that a general agent has the right to extend the time for paying the premiums, or accept premiums after they are due, and thus preclude the company from relying on a forfeiture, we have been cited to no case wherein it has been held that a general agent has express or implied authority to represent to the insured that he will never be required to pay any premiums on the policy. By the contract of insurance the insured agreed to pay an annual premium of $339. Aside from the undertaking of the substantial truth of the representations contained in his application, the only obligation imposed on the insured was the payment of the premiums as they became

due. Certainly no general agent has a right to bind the company and thus nullify the only obligation imposed on the insured by the policy, by stating that he would never have any further premiums to pay. To so hold would put it in the power of a general agent completely to destroy an insurance company, for if bound by his representations in one case it would be bound in all others, and under these circumstances it could never collect any premiums from the insured. The authority of the agent must be determined by the nature of his business and the apparent scope of his employment. If his conduct or representations are not in furtherance of his principal's business, but are positively hurtful or inimical to the rights of the principal, it cannot be said that a reasonably prudent man, having dealings with the agent, would have the right to suppose that the agent was acting under authority from the principal. In this case it must have been apparent to the insured that if the agent's representations were true they were sufficient to nullify every obligation imposed upon him by the policy. Under these circumstances he could not close his eyes and rely upon the fact that the agent was acting within the apparent scope of his authority. The authority to write insurance does not confer the power to give it away. When an insurance agent represents that the insured is never to pay any further premiums on the policy the insured knows that he is getting something for nothing. The conduct of the agent and the character of the representations are sufficient to put a person of ordinary prudence on notice that the agent is exceeding his authority, and the insured is not justified in relying on such representations.

As neither Estes, the general agent, nor Duncan, the sub-agent, had authority to represent to Eades that after payment of the small sum of $80 he would never be required to pay any further premiums on the policy, and as the representations were so manifestly antagonistic to the interests of the defendant that an ordinarily prudent man should not have relied on them, we conclude that defendant is not estopped by such representations from asserting a forfeiture of the policy on account of the failure of the insured to pay the second premium. Nor is defendant estopped by reason of its alleged failure to notify insured that the Standard Trust Company had not paid the second premium. The evidence shows that it did notify the insured that the second premium had not been paid. Notice that it had not been paid at all was certainly notice

that it had not been paid by the Standard Trust Company.

The trial court should have directed a verdict in favor of the defendant.

Judgment reversed and cause remanded for new trial consistent with this opinion.